The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, number 16-2107. Mr. Logan. May it please the Court, Emmett Logan for Sprint. Also here for Sprint today is Christy Milliken from our Washington, D.C. office. The last time that I had the privilege of arguing before this Court was October 31st, 1997. That was Gas Person v. Sprint. Judge Motz was on the panel. I was about to say I was here. You were on the panel, Your Honor. And in that case, Sprint had been accused of trespass, conversion, and racketeering for having used the rights that are the subject of the license agreement that's at issue today. And I bring that up because one of the ways to frame a key issue in the case is whether the fair market value of a license is affected when the exercise of the rights that the license reported to grant comes with 25 years of litigation. And to put that into context, the Court on September 9th of this year entered an order raising a question as to whether the appraiser's decision was an arbitration award that should be reviewed under the Federal Arbitration Act. Both parties agreed that because the AAA panel had decided that it was an arbitration award, that it has to be reviewed as an arbitration award and has to pass the test of the Federal Arbitration Act. Norfolk Southern doesn't contest in their brief that when an arbitration decision is subject to review under the Federal Arbitration Act, it's not a mutual, final, and definite award if it's subject to unresolved assumptions or conditions. But Norfolk Southern adds this qualification. Only if the parties specifically directed the arbitrators to consider the matter that has been unresolved does it affect the mutuality, finality, and definiteness under the Federal Arbitration Act. Can you help me, please? Going back to the inception, just walk me through when this became a final arbitration award. As I understand it, under the licensing renewal provision of the agreement, the valuation process was triggered with one valuation which the other party did not accept. A party came forward with a valuation based on one appraisal methodology. The other party presented an appraisal utilizing a different appraisal methodology. That tie was broken by a third-party appraiser. Am I correct so far? Well, I wouldn't agree that there was a tie that was broken. Well, there were differences. I mean, well, it was a tie in the sense that it was one person with one appraisal and one person with another appraisal. That's what I meant. But this was all a process laid out under a provision of the agreement that covers licensing and renewal. Correct. It's a license agreement and the provision in question is Section 2.2.2. And it covers the procedure for deciding what the renewal rate is for the license. Correct. Thank you. But then a third-party appraiser was brought in to attempt to reach an accommodation. No testimony was taken. Neither appraisal was vetted in the sense of being subject to cross-examination. No additional evidence was presented. And, in fact, at least as I understand it, Sprint's arbitrator was not a party to the final decision that led to the final number. Correct. And what indicia of arbitration does that have? I don't think that it has any indicia of arbitration. And that's one of the reasons why we have a deficient award here. But just stay with me in my question, okay? I'll ask the same question on the other side. It's not a trick question. I'm simply trying to understand. So what came out of the appraisal under 2.2.2 was not an arbitration, because that third appraiser sided with Norfolk Southern's appraisal subject to two outstanding conditions, what he called extraordinary conditions, right? What he called extraordinary assumptions. Extraordinary assumptions. For purposes of my question, it just wasn't, it was a qualifier. It was qualified. So then Sprint invokes the arbitration provision of the agreement 20.5. After Norfolk Southern said the appraisal process is over, you can no longer go back to the appraisal. So then it goes to, it goes before the arbitration panel. Correct. The AAA panel. The AAA panel. That's correct. Was the evidence presented, was there ever a point at which the evidence was presented supporting the appraisals, the competing appraisals? To the AAA panel? No. Well, then when did this become, and how did this appraisal evolve metamorphose into a final arbitration? Because you, Sprint, said that it's a final, as I understand it, that it's a final arbitration because the AAA panel said it was. Correct. Well, who determines whether something is arbitration? Right. So the first thing. What body determines that? The first thing that happened after. No, that's not the. What body determines whether something is arbitrable? The rule is that generally arbitrability is decided by the court. Correct. Unless there is a specific provision in the party's contract that says it's to be decided by the arbitrators. You followed along in everything that my colleague asked you, and then you said it seemed, but you come to this court saying, yes, this is an arbitration award, pointing to the American Arbitration Award's second, its action. So what gave it the authority to determine something was an arbitration award? Right. So if the law is generally the court decides arbitrability, unless there is a provision in the contract that says that the arbitrators are to decide, and then the cases say that if the rules that the parties have adopted call for the arbitrators to decide arbitrability, then it decides. Is there a clause in this contract that says that? I'm sorry? Is there a clause in this contract that says? In our contract, the arbitration is according to the rules of the AAA, and the AAA rules call for the arbitrators to decide arbitrability. But that's not, okay, and thank you, but that's still not my question. Let me try again. My question is, when did this become, how did something that is not, there's no dispute, there's no substantive process, there never is a substantive process. I don't understand how, it's not whether the question is arbitrable, it's whether there was ever an arbitration award to go to the AAA panel. And the reason I ask is that there is case law that says that appraisal isn't arbitration. Is or is not? Isn't. Okay. Is not. And if it wasn't arbitration, which you seem to agree, when it got to the AAA panel, the AAA panel couldn't make it a final binding arbitration. And the reason that I think this matters, apart from the fact that it's conceptually, there's a gap between the time you leave the appraisal and the time it comes out of the AAA panel. If as a consumer, I mean, right now you have Sprint in Norfolk Southern. If I, as a consumer, agree to an appraisal process to decide the amount of rent, or I'm going to pay at the end of a term, and I say the fair rental value is one thing, the landlord says the fair rental value is another thing, someone comes in and could flip a coin and say, I agree with the landlord. And that's not a binding final arbitration. It goes to the AAA panel, and there is never a point at which the evidence, my fair rental value evidence and the landlord's fair, and I'm sorry I'm taking up all your time, but I'm still trying. It's a critical question for me. Nobody looks at my fair rental value evidence and the landlord's fair rental value evidence and vets them. They never compete. There's never been a process at any point. So how does that yield? And the person who flipped the coin in favor of the landlord said, but that's subject to some extraordinary assumptions that I don't even know are correct. So a court couldn't even enforce that without additional fact-finding. That's clear, Your Honor. And that's the basic point of our position. A court can't enforce this. And I do understand your position. What I don't understand is why you think it's final binding arbitration, when it became so. I don't think it's final in binding. I do think that we have to treat it as an arbitration. It's an arbitration award because that's what the AAA panel said. And because your contract agreed that the panel would decide. That the panel would decide on arbitrability. So what you would do is say, but this is, okay, they've decided that this is arbitration award. So you previously argued that this was not an arbitration award. That's what we argued to the panel, yes. Now you say, yes, I have to say that because my contract says that the panel decides that. That the AAA panel decides that. We've had a panel. The district court should have decided it, should have referred it to the panel, but she did, right? She should have decided whether it was arbitrable or not. No, Your Honor. Our position was that the arbitration panel should have decided arbitrability, but they made the wrong decision in saying that the appraiser decision was an arbitration award. But we don't believe that there is a basis for challenging the decision of the AAA panel under the Federal Arbitration Act. That it was an arbitration award. That it was an arbitration award. The consequence of that is that it has to be treated as an arbitration award here. And because it can't pass the test of mutuality, finality, and definiteness under the Federal Arbitration Act, it can't be confirmed and it should be vacated. I think I see your argument. I'm sorry. No, go ahead. I think I see your argument now. I mean, I think I understand your rationale. Which is not to say it necessarily makes sense to me, but I do understand it. So can you tell me maybe your strongest case? Because generally, as you know, we have this presumption and we, you know, even if the arbitration award is unreasoned, if, for example, the arbitration award hadn't included these two exceptions, conditions. Extraordinary assumptions. Extraordinary assumptions. There would be really no doubt, I guess. I mean, you wouldn't have a claim. And it isn't just that the arbitrator, I'm sorry, the appraiser's decision included the extraordinary assumptions. It was expressly made subject to the extraordinary assumptions. Right, I understand. But without the extraordinary assumptions. It was made clear that the appraisers were not deciding that and that, as Mr. Archianas put it, that he was reserving his assent. And if either of those assumptions proved not to be true, he was withdrawing his assent. Okay. I do understand that. What is your best case? Because there aren't very many cases. We cited a dozen cases. Yeah, but none of them were really. If you want to point me to one, I couldn't find one that was really pretty close to this. I would say that Sunshine Mining, the Ninth Circuit case from 1987, is the case that best answers the question that's raised by Norfolk Southern's position in this case. Norfolk Southern's position is, yes, an arbitration award that's subject to unresolved assumptions or conditions. It's not mutual or final or definite. But only if the parties have specifically told the arbitrators to decide that. And in the Sunshine Mining case, that involved the termination of an employee. And the arbitrator was directed to determine whether there was just cause for the employee's termination. The arbitrator made an award that was subject to a psychiatric examination to determine the mental health of the employee. And the court specifically ruled that even though the arbitrator was not specifically directed to decide that issue, that it was a plausible interpretation of the party's agreement, that that was part of determining whether there was just cause. And I'll just read briefly from the Ninth Circuit opinion. This is 823 F. 2nd of 1294. The issue submitted to the arbitrator interpreted cause to encompass a mental fault element. That is, an insubordinate but mentally ill employee would lack the fault necessary to support a finding of just cause. An award that considers a just cause provision to include an element of fault is a plausible interpretation of the contractual language to which the court must defer. So what's the holding? The language you read was the same as the language you told us about. So where do we go? So the holding is if the interpretation of the arbitrator, that a particular question needs to be answered before an award can be made, is a plausible interpretation, the court has to defer to that interpretation. So what did the Ninth Circuit do? The Ninth Circuit held that the award couldn't be confirmed and had to be returned to the arbitrator for completion of the arbitration procedure. Well, but that raises, what would you suggest we do here? Vacate the award and return it to the appraisers for a determination of the fair market value of the license. Subject to this process again? Well, I don't know what you mean. Because as far, I mean, your argument, it seems to me, leads us into almost an irreconcilable circularity. It goes back to the appraisers. They disagree. That kicks it into arbitration, and the arbitration panel has the authority to decide that something that has, bears, and the focus is still a little different. Well, the remand order could, of course, direct that it can be conditional. Yeah. Right. And the remand order also ought to direct that the appraisers should decide the matter as appraisers, not because they think one appraiser or the other would be more likely to prevail in court. Well, the problem is, since we've now decided there's an arbitration clause, you know arbitrators can decide on any grounds they want to as long as they can give you just a figure. We never delve into their rationale. If they tell us their rationale, it's one thing. So I think that would be beyond the spirit of the Arbitration Act, to direct them that they can't do this, that, and the other thing. We could direct them that they can't make it conditional, that they must make it definite. We can do the requirements that are in the Arbitration Act. But other than that, I mean, we can't direct them, for example, to hear witnesses or to consider testimony or to let other people. I mean, that's just not in the cards. Your Honor, I understand that, and I believe that if this went back to the appraisers for a second go at the appraisal process, at the attempt to come to some type of decision, a final decision as to what the fair market value of the license is, that they would be able to do that. But this time, at least I would endeavor as best as I could to help them out. The last time, the lawyers were excluded from the process. Yeah, but they may exclude you again. Well, the problem was that Mr. Argyanus didn't know that this was an arbitration. He thought that he could only do what both parties agreed to. And since Norfolk Southern said we won't participate if the lawyers are participating, that left us without a choice. But you still have the same contract. We're not going to rewrite the contract for you. No, I understand that, Your Honor. But I believe that if it's clear to the arbitrators that they can't make a conditional decision, that we can come out of that with a final decision. All right. You took three, almost four minutes. Three minutes and 48 seconds. So I'll let your colleague have four minutes. I just don't want him to think that he's being cheated. And we'll let you have your time for rebuttal. Thank you, Your Honor. Thank you. May it please the Court, Gary Bryant for Norfolk Southern. And I may need that four minutes to convince Judge Motz that this was an arbitration, not just because the second panel said it's an arbitration, but because it fits within the law. Judge Duncan, but that's fine. Or at least you're gesturing to me. Yes. Yes, Your Honor. Oh, I'm sorry, Judge Johnson. We all do very much alike, you know. The district court's analysis in our judgment addressed two issues that we believe are dispositive. In Part A of her opinion, the district court concluded that Section 2.2.2 resulted in the majority decision as a final and binding arbitration award. It couldn't possibly by definition. First of all, it's not even brought pursuant to the arbitration provision of the agreement. And it's not final. It's subject to extraordinary conditions that can be upended at any moment. So almost by definition, it can't be. Well, Your Honor, all I can do is beg to disagree and give you the authority that this circuit has already cited with approval in one of its opinions, the APOC's opinion that we cited. And I'll read from the McDonnell Douglas Finance Court case from the Second Circuit. And that's what this circuit cited. And that's what this circuit says defines arbitration. Does it overrule the Supreme Court? I beg your pardon? Which has said that an appraisal is not arbitration? An appraisal by itself doesn't have to be arbitration unless the party says here's what we're going to do. We want a figure. And the way we're going to get to this figure, if we can't agree, is we're going to hire an appraisal and give that dispute to that appraiser and have the appraisal come up with a figure. If the parties do that, the parties have submitted the matter to arbitration. But isn't that what happened in Omaha Water? I know you don't like that case, and you sort of miscited it for the proposition that it wasn't binding because it was subject to conditions, but they're the same conditions that exist here. There are many ways that you can resolve a dispute through arbitration. You can do it this way. We want a regular trial, and we're going to let arbitrators. Okay, but that's a different, if we could just stay, the reason that I took issue with what you were saying and with what the district court says, and it would just help me so if you could stay, kind of stay on my point. Okay. I'm not questioning the AAA panel. What I'm talking about is the appraisal process, and what you were telling me was that the district court was correct. Yes. In finding that the result of the appraisal was final in binding, which I think is questionable legally and just on the face of the conclusion. I think you've misunderstood the dispute. Well, one of us has. I'll just make my argument. This is what the dispute was. Both parties are trying to get to a number for the renewal term, and there was a long process in Section 2.2 that said this is what you do first. Sprint. You go get an appraisal who puts a value on it, and we'll see if we can come up with a rental rate based on that appraisal. I am familiar with 2.2.2. They got to the point where you had two different appraisals, two different numbers, and they couldn't agree. That was the dispute. The parties got together and said, under Section 2.2.2, how do we resolve that dispute where you have two completed appraisals, they're far apart, the values based on those appraisals are far apart. The methodologies are different. Under 2.2.2, the parties contractually agreed to hire a third appraiser to come in. Correct. And they told that third appraiser, this is how we want you to resolve the dispute. And the dispute was, what is our rental rate? And it didn't necessarily have to be Sprint for Norfolk Southern. It could be in the middle. And incidentally, Mr. Argyonis didn't say it's the Norfolk Southern rate. Mr. Argyonis came back in between the two rates. These are the instructions that the parties gave to Mr. Argyonis. And I'm quoting from 156.157 of the Joint Appendix, and it's the written instruction. Under the license agreement, there are two aspects to the work of the third appraiser. The first entails efforts to come to an agreement with one or both of the other two appraisers. Those efforts do not necessarily entail identification of inconsistencies, weaknesses, or errors in the appraiser's logic, disqualification of an appraiser's report, or fieldwork or research by the third appraiser. It goes on to say at the end that the license agreement leaves to you the determination of how the process should be structured. Only if the dispute was not resolved in this compromise stage was Mr. Argyonis supposed to do a formal appraisal, in which case we would have three appraisers go back to 2.2.2, which has detailed procedures for how to resolve it after that with an averaging of some of the appraisals. Didn't have to get there because they resolved the matter in Part 1 of Mr. Argyonis' role. What they basically told Mr. Argyonis is, look, I've got the Sprint appraisal. I've got the Norfolk Southern appraisal. We don't agree with these appraisals. Don't worry about it. We want you to reach a compromise decision for us. And in doing that, you don't have to analyze these appraisals at all. You don't have to do fieldwork. You don't have to do research. The parties have been involved in this process for 18 months. They spent a lot of money. What if Mr. Argyonis withdraws his assent? Well, he never did that. He hasn't yet. I beg your pardon? He hasn't yet. He still could. What if he does? And who determines? Go ahead. No, no, I'm so sorry. Based on the extraordinary assumptions, what if he does? We cited the McDonnell-Douglas case for this proposition, and the Second Circuit quoted Judge Weinstein, who said as follows, an adverse proceeding, submission of evidence, witnesses, cross-examination, are not essential elements of an arbitration. Did you hear her question? I'm sorry. If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration. No, but what we're asking you is that would be all fine and good if we hadn't had these reservations of his assent on two grounds. They're there. I understand that. So my colleague's question to you is what happens if he withdraws his assent? I don't think you can – once you have a final and binding arbitration. But you have a final and binding arbitration if you're reserving the right to withdraw your assent. That's the issue. I'll address that issue. Okay. We do not believe that it was ever the responsibility of Mr. Argyanus to check ATF values or to resolve marketable title for two reasons. Number one. You might be right. But this is the award you got, right? You're stuck with the award or the resolution you got. Right. I won't prejudge it as an award. So how – under the statute, we only enforce arbitration awards that are definite. Right. Well, the panel seems to believe that because of these extraordinary assumptions, this must not be a definite award. The reason that – first of all, let me address marketable title. The parties – what Sprint didn't want to happen is for Norfolk Southern to license a portion of the rail corridor that it didn't own. Now, this is a 780-mile ribbon running through the eastern half of the United States. Norfolk Southern acquired interests in these properties over a century from thousands of parcels. You can imagine in some states like Virginia, they can do it by condemnation or fee simple or easement, and they piecemeal this thing across the country. You're talking about thousands of pieces of paper, thousands of title searches all the way across the country in order to resolve marketable title issues. Well, that's just impractical. Nobody could do that. And so this is what the parties did. The parties said, here's what we're going to do to protect Sprint. And this is the reason that marketable title was never an issue, and it was never something that had to be decided or even considered in valuing the rail corridor. Let me read you the provision of Section 3 that Sprint won't focus on. See, I speak only for myself, but I think you're probably right. But that doesn't change the language that's here. This third person that you got in is saying he could say, I'm reserving my opinion pending the coming election, which has nothing to do with this. Right. It would still be reserving it. Right? Well, when the parties select an appraiser to come up with a valuation, MAI appraisers don't do. I mean, the Norfolk Southern appraisal has an assumption in it that says, I'm not certifying marketable title. The Sprint appraiser says the exact same thing. And the reason is because in the agreement this provision exists, railroad further agrees that upon proof of failure of title of a portion of the rail corridor, which is then paid for by U.S. Sprint, if U.S. Sprint is required to pay a third party for use of such portion of the rail corridor, then railroad will refund and reimburse U.S. Sprint for such payment to a third party. The reason marketable title is a red herring is because marketable title was accounted for in the contract itself. If Sprint had to pay somebody else for what Norfolk Southern says it was licensing and that Sprint had used for 25 years, Norfolk Southern pays the money back. What's the point of the extraordinary assumptions, the two extraordinary assumptions? I'll tell you what it is. You've got an MAI appraiser governed by the institute that controls MAI appraisers. And they are very nervous about putting their name on something and calling it an appraisal when they haven't done all the things that are required of MAI appraisers. In fact, if you look at the record, Norfolk Southern said, let's say that this, if they settle this thing, it's going to be a valuation. And Sprint said, no, let's not call what Mr. Argyonus does a valuation. Sprint said, insisted, let's call it a compromise for settlement purposes. And the reason is because Mr. Argyonus is going to be uncomfortable signing something called evaluation when he hasn't done his appraisal. He's telling the world. Let me tell you. You seem to understand that. Yeah. And you knew that going in. Yeah. So it seems to me that then you had to, in your instructions to him, make it clear that it can't be subject to these conditions. Well, we think that the instructions given to Mr. Argyonus, well, I think the district court analyzed it properly when the district court said, based on the instructions both parties gave, these assumptions are compelled. Because when they gave him the instructions, come up with a number. Just come up with a number. You don't have to do valuation. Toss a coin. Well, it didn't cost a coin because a toss of coin would be one or the other. The number they came up with was not an off the chart. It feels like reading this with the two extraordinary assumptions and the right to reserve or to, yeah, to withdraw his assent, really feels like this third appraiser just split the difference. Yeah. Well, he didn't flip a coin because flipping a coin would have been one or the other, and it was neither. Split the difference then. It was neither. He, first of all. Did he split the difference? I didn't think he even did that. Well, of course. The number he came up with was less than the Norfolk Southern number. Halfway between. That would be splitting the difference. If it were halfway in between, I don't know that we'd be here. It was much closer to the Norfolk Southern number. It was much closer to the Norfolk Southern number. The assumption here is he didn't do anything, and the record doesn't reflect that at all. He analyzed both of those appraisals. As a matter of fact, one of the arguments that Sprint has been making all along is, well, he acted outside of his authority because he thought the Norfolk Southern appraisal would hold up better in court. Well, that's not the only reason on which he based his decision. If we should decide that we have to vacate and remand, we would vacate and remand to the district court to remand this for arbitration for this same group of three, right? It depends on the nature of why you decided to remand it. If you decided to remand it because they're unresolved assumptions or because there is a suggestion in the majority decision that maybe Mr. Argyonus didn't think it was a final and binding arbitration award, then I think you're probably correct. It would go back to those three folks. Well, under what circumstances would we send it to someone else? Well, this thing started with our Section 2.2.2 valuation. It went to another set of arbitrators who reached a decision that it was a final and binding arbitration award. It went back to the district court. I suspect if this court finds that there's a defect in what Mr. Argyonus said in his assumptions, then I suspect that's exactly where it would go back. But our argument is this. Our argument is the instructions that they gave to Mr. Argyonus required that he make these assumptions. They told him you don't have to do field work. You don't have to do research. If you're going to resolve marketable title, if you're going to resolve ATF values, you have to do field work. You have to do research. What the party said is we've done all of this work. Look at these. You don't have to look at it with a critical eye. It is entirely up to you how you want to resolve this and come up with a number. And the majority decision for settlement purposes, remember what the parties told Mr. Argyonus is when you come up with a number, in phase one, without the formal appraisal, it will be a compromise for settlement purposes. And then you get a majority decision for settlement purposes that has a number, and it is accompanied with an e-mail that says thank you for allowing me to serve you. Here is the majority decision for settlement purposes. And then Sprint's lawyer calls him up and says, is that it? Is that all you're going to do? And he says, well, if you want me to, I can do the things you told me I didn't have to do, which is check ATF values and a few other things. You eliminated in your retelling of what happened his two extraordinary reservations. When he initially gave his decision. We didn't add those in response to any lawyer's comments. No. No. Maybe I can ask you the converse of the question I asked your colleague. What you think is the best case for you in holding that this is a definite and enforceable arbitration award? The case that has facts closest. You mean the – Your Honor, I don't know that there is a particular case that is anywhere close to what we have here. Because the types of assumptions that we have here are assumptions that you see in these kind of valuations all the time. And in every single case that they cite, those assumptions, presumptions, all of those conditions that they're talking about were things that it's clear that the parties were supposed to decide through the arbitration. In this case, in light of the instructions given to Mr. Argianes, it is clear that that's not an issue he was ever to decide. And appraisers don't – If you know anything about MAI appraisers, they don't deal with title issues. They don't deal with – The very fact that these parties said, we're going to get MAI appraisers to set the rate, it is absolutely no surprise that you have an MAI appraiser that says, oh, by the way, I didn't check title issues. You talk about the parties as if there's somebody over there in left field. You're one of those parties. You were part of the contract. Absolutely. So you knew what or what they might not do. And this is what they did. Right. This court seems to be – This court seems to believe that because an MAI appraiser that was told, go cut a deal and settle this dispute, says, okay, here's the number that we've come up with. Oh, by the way, I haven't checked the ATF values, and we're not checking marketable title. No, that's not what he said. He said he reserved his assent because of the marketable title issue and because of Rex's ATF value is reasonable, which it appears to be, whether it's reasonable. If either of these extraordinary assumptions are found not to be true, I reserve the right to withdraw my assent. That's what he said. We think that that is, with regard to setting the value based on the information, based on section 2.2.2, they set that value based on section 2.2.2. And it's our position that what he did by way of the assumptions are what every single MAI appraiser does. And if you look at the contract, the contract provides the mechanism to deal with marketable title, which is why the parties didn't – which is why they chose MAI appraisers. They knew the MAI appraisers wouldn't deal with marketable title. They don't deal with marketable title. Could I ask you – They had a provision that dealt with it. Could I ask you this? Yes, ma'am. Would this process pass muster in a consumer arbitration context? Say, for example, in my fair rental value hypothesis. If what the parties did was to say, we want you to come up with a new – Would you like me to clarify that I sign a contract, my lease, for instance, that has an analogous provision, and the third party tiebreaker comes back and says, I agree with a figure that's closer to the landlord's fair rental value. Yeah, but subject to future construction, subject to changes in the demographics of the neighborhood, subject to – and if any of those things are not borne out, I withdraw my assent. No. Okay. Unless that contract had another provision that dealt with those very things like this one does. Well, it doesn't deal with those very things. It's a provision of the contract that deal – a separate provision of the contract that deals with arbitration. And that's the – The second provision deals with marketable title. It basically says, look, we'll take care of marketable titles in this section of the contract. And what I'm saying is it would pass muster if you dealt with those assumptions somewhere else, which I think is what the parties did here. I see my time is almost up. If there's no further questions. You have a little extra time because I gave the other man – Oh, it's counting up. It's not counting down. Yeah. You have three minutes. Yes, Your Honor. You don't have to use three minutes. I think the court understands our position. I would like to – I'd like to read one section if I've got a couple of minutes left. And it's from the court's opinion. And I'll tell you why I think this is right. And that's the best I can do. The party's directions to Mr. Argyanus requested that he seek compromise. And he also indicated that he need not identify inconsistencies, weaknesses, or errors in the appraiser's logic, disqualification of an appraiser's report, or conduct fieldwork research of his own. There is no authority or evidence suggesting that Mr. Argyanus could have come to the compromise with either Mr. Rex or Mr. Goldsboro without her emphasis, making assumptions. Mr. Argyanus was requested to seek compromise with either of the appraisers. Excuse me. Just for clarification, I'm familiar with that section. And it's your position, in short, that assumptions notwithstanding, this conditional process was rendered final and binding by the arbitration panels in premature, even though what they got – and I'm not trying to argue with you. Even though what they got had those assumptions built in, it nevertheless was within the power of the arbitration panel to convert something that wasn't final. It was an appraisal for settlement purposes or however you choose to characterize it. It became final by virtue of the good house-seeking seal of approval. And I'm being facetious, but you know what I mean. The infirmature of the arbitration panel. Is that, in essence? Well, our argument would be that it was final – that the district court could have held that it was final and binding arbitration award. But once Sprint insists that it goes to the second arbitration panel, and the second arbitration panel concludes that it's a final and binding arbitration award notwithstanding this, as this court well knows, once that second arbitration panel rules, that second arbitration panel decision can only be overturned for misconduct or something else that's very narrow and focused. If they're interpreting the law and it is – unless it is clear error, then that stands up. And we think that Sprint's bound by that because we didn't want it to go to the second arbitration panel, obviously. Somebody's been switching sides throughout the case. And it did. And we got the decision that favored Norfolk Southern out of that panel, and we think that's it. And I think Sprint knows that that's it. And I think that alone is evidence or is grounds for upholding the decision. Thank you very much. Thank you. Mr. Logan, you have a little bit of time. I'd like to pick up with the last question that Judge Duncan asked, whether the AAA panel can convert something that is not a mutual final and definite award into a final and binding arbitration award. And there is confusion on the difference between the AAA panel saying this is a final and binding award on the one hand, and a determination under the Federal Arbitration Act, which is determination for the court, that it's a mutual final and definite award. And it's important to keep the distinction between those two. I think Judge Duncan has that distinction down. I got that one. You have that distinction down? I think I do, yeah. Thank you. So then the next point that I would make is that Mr. Bryant, in response to a question that Judge Motz asked about what his best case is, said, well, we don't really have a case that supports our position. There isn't anything close enough. But these assumptions are the type of assumptions that are always made in an evaluation made by an appraiser. Now, the problem with that is the appraisal decision, the December 11, 2014 decision, isn't going to be reviewed, isn't reviewed by the court as a valuation. It has to be reviewed as an arbitration award. And so it has to pass the test of being a mutual final and definite arbitration award and because it's subject to, not just based upon, and not just including the extraordinary assumptions, it doesn't pass that test. And if you would agree with me without the extraordinary exceptions, we would have to enforce, in your view, have to enforce this as an arbitration award. If it didn't say this is subject to extraordinary assumptions, if it didn't say that Mr. Argyanus reserves his assent without prejudice or time limit, if it simply said these two appraisers agree that the fair market value is $6,100,000 per year, then the court would have properly enforced and confirmed the award. But that's not what we have here. Right. Could you just clarify something you said? And there was no time limit within which Mr. Argyanus could rethink? Right. You just said that. Yes. I'm looking for the December 11, 2014 paper. Here it is. Assent by Argyanus and Rex, but with Argyanus reserving his assent without prejudice or time limitation subject to the following extraordinary assumptions. That's okay. So that's in the appraiser decision itself. Thank you. So the point that Mr. Bryant made, one of his key points was marketable title is never an issue in an appraisal. Again, that butts up against this tension that we have here between an appraisal or evaluation on the one hand and an arbitration award on the other hand. And if it's an arbitration award and if the arbitrators decide that marketable title is an issue, so long as that decision is a plausible interpretation of the party's contract, the court is required to defer to it under the Sunshine Mining case. And that's what we have here. In terms of the argument that the instructions of the parties required the appraisers to draw assumptions, the district court actually said that too, but that's just not right. They weren't required to draw assumptions, but the more important point is it's not just that they drew assumptions or made assumptions, it's that they expressly made the decision subject to the assumptions and made clear that those assumptions hadn't yet been decided upon. The result of that is that when you're considering an arbitration award as opposed to evaluation or as opposed to an appraisal or as opposed to a compromise for settlement purposes, you have to apply the standards of the Federal Arbitration Act. And under the standards of the Federal Arbitration Act, that type of a decision is not a mutual, final, and definite award. So let me just ask the question I asked your colleague. I don't think I've asked you this, but it's been a long morning and I can't remember for an whole hour. So what would we do if we agreed with you that this wasn't mutual, final, and definite? Then you would remand to the appraisers for determination. We don't remand to the appraisers. We would remand to the district court. Remand to the district court with instructions to remand to the appraisers. And are all these people alive? Yes, Your Honor. Well, I guess I shouldn't say that. I have not been in contact with either Mr. Rex or Mr. Argyanus, but I haven't seen anything to indicate that there is any problem with them serving further. All right. Thank you very much. Thank you, Your Honor. I think we appreciated the arguments from both lawyers. Thank you very much. Thank you. We'll come down and say hello to the lawyers and go directly to our next case.
judges: Diana Gribbon Motz, Allyson K. Duncan, Stephanie D. Thacker